UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

TODD R. BLACK,

        Plaintiff,                              Case No. 1:16-cv-848

v.                                                      Honorable Robert Holmes Bell

CARMEN D. PALMER et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Todd R. Black presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, though the actions about which he complains occurred while he was housed at the Michigan Reformatory (RMI). He sues the following RMI officials: Warden Carmen D. Palmer; Deputy Wardens Sam Schooley and Gregory Schipper; Assistant Resident Unit Supervisor (ARUS) C. Prince; Sergeant J. Miller; and Grievance Coordinator K. Miller.

Plaintiff alleges in his amended complaint[1] that, on March 8, 2015, he asked to be taken into protective custody because he owed $100.00 in gambling debts to other prisoners, but had no funds to pay them. He believed that he was in danger of being injured or killed for failing to pay. Plaintiff was placed in segregation during the pendency of an investigation. He complains that, under MDOC policy, he should only have had to stay in segregation for seven business days, at which time the investigation should have been complete. However, Defendant Price did not conduct the investigation until March 28, 2015.

Plaintiff allegedly spoke to the resident unit manager and the inspector, and they told him to file a grievance. Plaintiff filed a grievance, demanding $100.00 per day for his extended placement in segregation. Defendant Schooley reviewed the grievance at Step I of the grievance process. Schooley concluded that the facility had violated policy by exceeding the time limit for

---

[1] On September 23, 2016, the Court issued an order directing Plaintiff to file an amended complaint on the form within 28 days. In a motion filed on October 19, 2016, Plaintiff sought an extension of time to submit the amended complaint (ECF No. 10). Plaintiff has since filed his amended complaint. The Court therefore will grant the extension of time and consider the amended petition as timely filed.

investigation. Schooley noted in the grievance response that measures had been taken to prevent such delays from occurring in the future. (Attach. to Compl., ECF No. 1, PageID.30.)

Following their investigation, Defendants Schooley and Skipper concluded that Plaintiff's allegations that certain identified prisoners had threatened to stab him could not be substantiated. They stated in their report that, while Plaintiff undoubtedly owed the money, they were not persuaded that Plaintiff was at physical risk that would warrant transfer. They noted that they had searched the cells of the other prisoners for contraband and weapons. (Attach. to Compl., ECF No. 1, PageID.9.) As a result of Defendants' investigation and conclusions, Plaintiff was transferred back to Level IV, general population. (*Id.*)

On March 30, 2015, when Plaintiff was being transferred out of segregation, he was issued a misconduct ticket. While Plaintiff does not specify in his complaint the nature of the ticket, he attaches the misconduct hearing report, as well as the charging document. (*See* Attach. to Compl., ECF No.1, PageID.26, 40.) From those documents, it appears that Plaintiff was charged with a Class I misconduct for threatening behavior. The charge indicates that Plaintiff initially disobeyed a direct order to leave segregation. He subsequently agreed to leave, indicating that he would go back to general population and "swing on someone," in order to get transferred. (*Id.*, PageID.40.) Plaintiff apparently responded to the ticket by saying that he was not guilty because he had stopped taking his psychiatric medications and says things he did not mean to say. According to the misconduct report, Plaintiff intended to say that "he was going out to take his lickens." (*Id.*, PageID.26.) The hearing officer found Plaintiff guilty of the charged misconduct on April 9, 2015, and Plaintiff was sanctioned to ten days' detention, from April 9 to April 19, 2015. (*Id.*)

Plaintiff contends that Defendants violated his right to due process when they failed to comply with prison policy by taking too long to investigate his request for protective custody. He arguably implies but does not expressly allege that Defendants violated his rights under the Eighth Amendment by returning him to the general population. Finally, he appears to complain that he should not have been convicted of the misconduct ticket or any other misconduct ticket. He alleges that Defendant Palmer is responsible for the problems, because she is in charge of the prison and sets the operational and segregation procedures. He also contends that Defendants Schooley and Skipper are responsible, as they are in charge of security classification placement. In addition, he suggests that Defendant ARUS Prince is liable, because he is the counselor for the segregation unit and that Defendant Sgt. J. Miller is liable, because he makes sure that things are moving safely. Plaintiff further alleges that Defendant K. Miller, as grievance coordinator, is responsible for grievances that are filed.

For relief, Plaintiff seeks $100.00 per day for the extra days spent in segregation beyond those authorized by policy. He also seeks to have expunged all misconduct tickets incurred between March 8, 2015 and October 2016, together with transfer to a Level-I facility.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff's allegations against Defendants Palmer, Prince, J. Miller and K. Miller are limited to their oversight responsibilities or responsibilities to handle prison grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Palmer, Prince, J. Miller and K. Miller engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Due Process

In his principal set of allegations, Plaintiff contends that Defendants violated prison policy and therefore his due process rights by taking more than ten days to investigate his claimed need for protective custody. He also arguably suggests that his conviction on the misconduct charge violated due process.

Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343,

347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, being kept in segregation from March 8 to March 30, 2015 did not implicate Plaintiff's right to due process. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court established the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515

U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff was kept in segregation at RMI for 22 days, less than the time found not to create a liberty interest in *Sandin*. Moreover, Plaintiff utterly fails to allege that segregation at RMI was unusual, much less that it was an atypical and significant hardship relative to the segregation in issue in *Sandin*. Under these circumstances, Plaintiff fails to allege that his 22-day segregation rises to the level of a due process violation.

Plaintiff also fails to state a due process claim in relation to his misconduct conviction. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the

> right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. 472. Plaintiff has not identified any significant deprivation arising from his convictions. Plaintiff received 10 days' detention as a sanction for his misconduct. Under the terms of *Sandin* itself, even placement in segregation for 30 days does not amount to an atypical and significant deprivation. Placement in detention for 10 days therefore necessarily falls short. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff cannot make the requisite showing.

### C. Eighth Amendment

Although Plaintiff does not directly raise an Eighth Amendment claim, he appears to allege that Defendants Schooley and Skipper, in deciding to return Plaintiff to general population on March 30, 2015, violated the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot

every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause a prisoner serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Plaintiff's allegations fall short of stating a failure-to-protect claim against Defendants Schooley and Skipper. According to the amended complaint, Plaintiff was taken into segregation when he stated that he was afraid for his safety, and he remained in segregation for more that three weeks. During that time, Defendants conducted an investigation into his concerns, including investigating the individuals Plaintiff identified. The fact that Defendants concluded that the risks to Plaintiff could be managed in general population does not demonstrate deliberate indifference. Plaintiff's complaint is devoid of allegations concerning the degree of risk he faced upon his return to general population, and he makes no allegations that he was ever threatened or attacked after his return. As a result, although Plaintiff may have disagreed with Defendants' decision to return him to general population, Plaintiff fails to allege facts suggesting that Defendants were deliberately

indifferent to a substantial risk of serious harm. Plaintiff therefore fails to state an Eighth Amendment claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: November 10, 2016                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE